[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-12067

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

GABRIEL BELL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:23-cr-00028-MTT-CHW-1

_____

Before ROSENBAUM, NEWSOM, and ABUDU, Circuit Judges.

PER CURIAM:

Gabriel Bell appeals his 87-month sentence for bank robbery. On appeal, Bell argues that the district court erred in applying a three-level enhancement pursuant to U.S.S.G. § 2B3.1(b)(2)(E) for possessing a dangerous weapon during the robbery.

We review the district court's application of the Sentencing Guidelines de novo and its factual findings for clear error. *United States v. Lozano*, 490 F.3d 1317, 1321 (11th Cir. 2007). For a district court's factual findings to be clearly erroneous, we "must be left with a definite and firm conviction that a mistake has been committed." *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010) (citation omitted). A factual finding is not clearly erroneous where a factfinder chooses one of two permissible views of the evidence. *United States v. Saingerard*, 621 F.3d 1341, 1343 (11th Cir. 2010). "The Government bears the burden of establishing by a preponderance of the evidence the facts necessary to support a sentencing enhancement." *United States v. Little*, 864 F.3d 1283, 1290 (11th Cir. 2017) (citation and quotation marks omitted).

The Sentencing Guidelines provide for a three-level enhancement "if a dangerous weapon was brandished or possessed" during a robbery. U.S.S.G. § 2B3.1(b)(2)(E) (2023). The commentary defines a "dangerous weapon" as follows:

> [A]n object shall be considered to be a dangerous weapon for purposes of subsection (b)(2)(E) if (A) the

object closely resembles an instrument capable of inflicting death or serious bodily injury; or (B) the defendant used the object in a manner that created the impression that the object was an instrument capable of inflicting death or serious bodily injury (e.g., a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun).

U.S.S.G. § 2B3.1 cmt. n.2.  In interpreting the Guidelines, "we have recognized that objects which *appear* to be dangerous weapons should be treated for sentencing purposes as if they actually were dangerous weapons."  *United States v. Miller*, 206 F.3d 1051, 1052 (11th Cir. 2000) (emphasis added).[1]  For example, we have held that § 2B3.1(b)(2)(E) applies to the possession of a toy gun, even if the toy was never displayed during the robbery.  *United States v. Shores*, 966 F.2d 1383, 1387–88 (11th Cir. 1992).  We have also held that the enhancement applies when a "robber uses a finger or some other hard object to cause the victim to believe that it is a dangerous weapon," even if the object is never seen by the victim.  *United States v. Vincent,* 121 F.3d 1451, 1455–56 (11th Cir. 1997).

The "critical" inquiry in applying § 2B3.1(b)(2)(E) is "whether the defendant intended the *appearance* of a dangerous weapon."  *United States v. Bates*, 213 F.3d 1336, 1338–39 (11th Cir. 2000) (emphasis in original).  In *Bates*, a bank teller reported that

[1] This is consistent with the approach taken by our sister circuits.  *See, e.g.*, *United States v. Robinson*, 20 F.3d 270, 277 (7th Cir. 1994); *United States v. Dixon*, 982 F.2d 116, 121–24 (3d Cir. 1992).

she "observed Bates reach with his right hand into his pants waist band area" and was afraid that he was grabbing a gun. *Id*. at 1337. Video footage from the bank's security system confirmed the teller's account of the robbery. *Id*. On appeal, we rejected Bates's argument that the § 2B3.1(b)(2)(E) enhancement required the presence of an actual weapon or an object that could have been perceived as a weapon. *Id*. at 1338. Although the teller never saw a weapon or object, we held that the enhancement was proper "because the definition of 'possess' does not require an object to be visible." *Id*. at 1339. Therefore, as "Bates's hand simulated possession of what *appeared* to be a dangerous weapon, and the victim teller perceived Bates to possess a dangerous weapon," we held that the enhancement was proper. *Id*. (emphasis in original).

Here, we hold that the district court did not clearly err in applying a three-level enhancement pursuant to § 2B3.1(b)(2)(E) because Bell appeared to possess a dangerous weapon when he robbed the bank. Possession can occur when the appearance of a dangerous weapon is conveyed by conduct; the victim need not observe the presence of a weapon or object. *Bates*, 213 F.3d at 1338–39. The district court found that, although the evidence did not show that Bell had necessarily possessed a gun, he had "something" in his pocket and intended to convey to the bank tellers that it was a dangerous weapon.

Bell passed a threatening note to the bank tellers stating, "PUT ALL BIG BILLS, IN ENVELOPE (ROBBERY) Do anything stupid, and I'll shoot you!" and lifted his shirt in a deliberate manner

24-12067                Opinion of the Court                 5

to expose that there was something under it.  The testimony of the bank tellers demonstrates that they saw an object at Bell's waistline.  Some described this object as silver and others testified that it featured a dark handle.  Both tellers testified that they believed that the object was a weapon, such as a gun or a knife.  The district court was within its discretion to find, based on a preponderance of the evidence, that the tellers were left with an impression that Bell simulated possession of a dangerous weapon.  *See Little*, 864 F.3d at 1290; *Bates*, 213 F.3d at 1338–39.

**AFFIRMED.**